May I please report? My name is Robert Metzler and I represent the United States in this case. This is a summons case in which the IRS issued summonses to four financial institutions in connection with the investigation of the tax liabilities of Stephen Sears for the years 2002 through 2007. Sears petitioned to quash these summonses, and the district court quashed the summonses to the extent that they disclosed client-identifying information. We believe that the district court erred in so ruling, and there are two issues that are presented by this case. The first is whether the attorney-client privilege protects client-identifying information in the records of third-party financial institutions, and the second is whether the client-identifying information in the records of the third-party financial institutions does not have any potential relevance in the IRS's investigation. We've extensively briefed the attorney-client privilege issue, but there are two points that I'd like to highlight. We have two independent bases for our belief that the district court erred here. The first is that bank records are not protected by the attorney-client privilege. The Harris and the Reiser cases that are cited in our brief, I believe, establish this point. There is not the aim of encouraging full disclosure in order to obtain proper representation when you have a bank record. It's just a relationship between a bank and its deposit. And the court made the point that any number of eyes can look at the information along the journey from presentation to cancellation. Exactly, Your Honor. A sea of strangers, as I think this court put it. And I think that pretty much puts that in a nutshell, why bank records aren't protected by the attorney-client privilege. Mr. Metzler, do I recall correctly that the district court judge did not address the Reiser case? On that particular issue, yes, Your Honor. And I think that oftentimes these summons proceedings are probably not the most significant cases on the docket, and that's just happened. But there is also a second basis for our position on the attorney-client privilege, and it's the general rule that client-identifying information is just not subject to the attorney-client privilege. It doesn't come within that scope. And there are exceptions, but we don't believe that the exceptions would apply in this case, because if you just look at the record, if you were to tell me today that, you give me the name of one of Mr. Sears' clients, I couldn't look at that information and tell you any specific communication that went on between Mr. Sears and that client. He could, for all we know, he could have been acting in a CPA capacity, preparing a financial statement for him. So we think that for this second reason, and I would also note that even these exceptional cases are a little bit different, because when we have the exception, we would be going to the attorney and asking him for the name of the clients. Here, the name of the client would not be coming from the attorney. It would be coming from the bank, and there already would have been a waiver of the attorney-client privilege in that situation. So I'd now like to move on to the relevance issue, if the Court has no questions on the attorney-client privilege issue. Okay, thank you. On the relevance, I think it's important, well, first of all, relevance is one of four things that the IRS must establish in making its prima facie case to show that a summons is valid or in normative enforcement proceedings. This is actually a petition of court proceeding. And the standard is a rather minimal one. As a matter of fact, this Court actually held that the government made its prima facie case, which was a ruling that we had to establish relevance here. But then, and this relevance requirement is that it's a standard of potential relevance. It's not the Supreme Court said in Powell, we don't have to have probable cause. The Supreme Court said in Arthur Young that it's not a standard where we have something has to be admissible evidence at trial to be relevant. It's purely one of potential relevance. And this is because we're at the investigative stage. We're not accusing anybody at this point. And as the Supreme Court said in Arthur Young, the IRS can hardly be expected to know whether the summoned data will in fact be relevant until it is procured and scrutinized. And the summons we have here is really sort of a garden variety summons when the IRS is investigating unreported income. And there's, and I think there may be this sort of, the district court may have had the idea that there's just something wrong with the IRS having the identity of the clients. When, in fact, this is sort of, this is a rather common thing for the IRS to have. Congress in Section 6041, which you all may get 1099s in connection with your tax returns, really requires in many instances that clients identify themselves. And then the IRS has this information available to it, and if it needs to it can go contact the clients. It's a judgment call. And as this Court said in Reiser, the IRS has wide latitude in these investigations. So that, and as a matter of fact, a case I cited in our brief out of the Fifth Circuit court, Portillo, in that case the Fifth Circuit actually, in one case, said the IRS was arbitrary in issuing a notice of deficiency when it had received the 1099 showing income, and it was different than the tax return, but it didn't go and talk to the client there. And the Court concluded the IRS was arbitrary. So my point is not to litigate that case, but just to show that contacting clients in an IRS investigation is not something that's untoward or anything. It's often part of a routine part of the investigation. I think that the main limit might be that the IRS doesn't have unlimited resources, and if it's not done commonly, it would be because of it. Do you want to talk about the Tedder case? Yes. The Red Brief has done an alternate. Yes, Your Honor. Well, I think the first thing I'd like to note, that this Court in Riser did distinguish that case, and so I don't think it's a very broad case. It's really, I think, one that should be narrowly read. And it's a very unusual case, and there are three things that I think are differences, at least between that and this case. One, in the Tedder case, the IRS, at the very start of its investigation, received documents from the taxpayer, but the names of the clients were redacted in that situation, and then the IRS went out and issued a summons to the third-party bank. And when it came, when the case came before the court, unlike this case, there was no finding that the IRS had made it showing a relevance. Here we had, in this case, we actually had the IRS's declaration from the agent who established relevance, and the district court found that here, and there was actually no counter-evidence on relevance in this case. Now, in the Tedder case, we don't know exactly what was in the record. It's not too clear on this point, but clearly there was enough there for the district court to find. It actually made a finding of non-relevance there, which is different from this case. And what this court said in Tedder was that the IRS did not show how it would use the client's names in that case. It was more of a failing the IRS is showing in that case. And in addition, in the Tedder case, the district court had all the documents before it. It did an in-camera inspection, did a very thorough analysis of these documents, and so it almost independently checked for relevance. And coupled with the IRS's failing of a showing there, I think that the case is very distinguishable from this case. And I would think, if you were going to read Tedder broadly, I think you would run into some tension with the Supreme Court's decision in Tiffany Fine Arts, because in the Tiffany Fine Arts case, and Tiffany Fine Arts is often cited as the case, which says that dual-purpose summonses are permitted. But in that case, the taxpayer actually made an offer of redacted documents with the client's names redacted. And the Supreme Court said that this did not make, this offer did not make the IRS summons of the client names irrelevant. The IRS there said that it wanted to verify the transactions, and the Supreme Court said that the IRS doesn't have to conduct its investigations in the least intrusive way. But I'd also like to, just on the relevance point, point out that there is clearly potential relevance for this client identifying information. If the judge says there's no relevance, is that a Rule 52 finding? Well, as I say, in this case, in the Tedder case, yeah, yeah, yeah. That is my understanding. That didn't happen in this case. No, in this case, the finding was exactly to the opposite. So if we're viewing this as purely a fact-finding case under the clearly erroneous standard, all's we have in the record is a declaration from the special agent establishing that this is relevant. And we have in the two declarations that are in our record excerpts from Mr. Sears, there's absolutely nothing said about the relevance issue. And so that if this were to be approached as a clearly erroneous case, you know, well, the fact-finding, first of all, is in our favor. And secondly, even if it weren't, it would be clearly erroneous. But so I think that the Court really below felt that because of the Tedder case, it probably had to rule that way. And I just think it didn't quite. Well, that comes through from the case of the judges. Yeah, yeah. But I think we believe that the case really is distinguishable. And as this Court pointed out in Reiser, it can be confined. And I'd also like just to say a little bit about the potential relevance. I could go on for a number of examples. But one of the things is that the agent indicated that she wanted to do a deposits analysis. And I think there was one of the points was that, you know, well, some deposits may not be, it might be loans or gifts. And the point is, is that when you do these deposit analysis, you know, you would start with the assumption every deposit is income. But that's really not the case. If something was a loan or, say, if the client said that gave money for Mr. Sears to make an investment, that wouldn't be income to Mr. Sears. Only the most common thing that would be income to Mr. Sears would be his fee, his attorney's fees. And so there would be a reason for the IRS to talk to the client. This is sort of like the Stone case that was mentioned where we had a doctor who the IRS was investigating a doctor. And there it's mentioned in the case that the IRS talked to the patients of Sears who had made, excuse me, not Sears, of the doctor in the Stone case. And they talked to the patients to determine, you know, what the checks they paid them for, would work for, whether they, you know, fees for services or were they for something else. If the Court has no further questions, I'd like to save the remainder of my time for rebuttal. All right. Good morning, and may it please the Court. Ken Miller on behalf of Stephen Sears. This is a unique case. The advertisements that Mr. Sears does focus on asset protection so that when the IRS gets a list of his clients, they are going to know the motive for the reason every client went to him. Motive is protected by the attorney-client privilege. So if the names connected with what they already know shows motive, the attorney-client privilege is involved. Second, strategy. When you read the strategies that are laid out, the asset protection theories, they are very specific. Presumably, they apply to a subset of all the clients that go to him. So I would say you have 100 percent knowledge of motive once you identify the clients. You will have a subset of that, but a substantial subset. But, counsel, he was a CPA and an attorney. Is there a wide range of services he could provide within the umbrella of CPA slash attorney? And so one would not necessarily be able to garner the services that were going to be rendered by the fact that he was selected to provide service. I believe that you would. You would know that they were coming to him for asset protection services. You would know he was an attorney. And the situation is similar to Liebman. Well, do you know if they came to him to prepare taxes? He didn't do tax returns? Your Honor, I don't know. That is not in the record that he ---- So you wouldn't necessarily know why they went to him. If he provides a wide range of services and asset protection is one of the services he provides, it's not a foregone conclusion that a person is going to him for asset protection. Your Honor, I respectfully disagree in that the opening page of his web page, excerpt of record, page 45, I'm an attorney, a CPA, a published expert in estate planning, offshore banking, real estate and investment planning. That's a lot of things. Just about, the next line, just about everything you need to know when it comes to asset protection. They all revolve around one core issue. So my point is, is I believe that the IRS will know the motive of everybody that goes to him. But what does the declaration say about whether or not that's the sole thing he does? It does not address that. Right. But the district court had access to that. And the determination of the attorney-client privilege is a mixed question of law and fact. But that's the factual aspect of it. The district court had this information in front of him. It had the declaration that he also does, advertises this way in a book. The district court sits in Orange County where Mr. Sears practices. And I believe that the district court's finding that if the IRS gets the names of the clients, they're going to know why they're going to Mr. Sears is entitled to some deference. And for that reason, I believe that the attorney-client privilege applies. The district court did not address Reiserer. However, it did cite United States v. Harris on which Reiserer is based. That, you know, records in a bank are normally not protected. But when the issue came up of whether or not this Leibman-type exception applies, the court didn't say, well, these are in the hands of a third-party record keeper, and therefore they can't be privileged. No. What it did was it went on to analyze specifically whether or not this would disclose attorney-client privilege information. And when — and because the court found that that is not — that's not what happened, the court — the court found that the attorney-client privilege was not implicated. The last point on that, and I think — I think it's — common sense and straightforward logic are important. Harris relied on the idea that when documents go to the bank, they're released to a sea of strangers. In California, there is a constitutional right of privacy in bank records. Therefore, it seems to me that when you give documents to a bank, you are not putting them out there on a sea of strangers. You're giving out their — you're giving them to people who have an obligation to keep them confidential. Not from law enforcement, but from the eyes that the court in Harris was referring to, the people that work at the banks. And Reiser was dealing with Washington, so it didn't have to deal with California's right of privacy. And then the year after Reiser, the Washington courts adopted a right of privacy in bank records. So to the extent that Harris and Reiser are in this court's decision-making process, I — it is a question of federal common law. And state law privileges and state law confidentiality don't carry the day. But they do inform the logic, which is, no, I'm not setting these free on a sea of strangers. On the issue of — finally, I would also like to point out that we did ask for an evidentiary hearing, both at the petition, when I filed the petition to Quash, and at every pleading along the way, we requested an evidentiary hearing. And at the — at the hearing, the actual hearing, we didn't have to ask for it because the tentative was in our favor. But I think if this court — if this court has an adverse decision, it should remand for an evidentiary hearing so we can find out what Agent Mackey knows that will tie the client names to — to the records that the IRS already has. Isn't that a relevance showing, though? Excuse me, Your Honor? Isn't that a relevance showing? That is — I think it is not a relevance showing to the extent that if you match together — if Agent Mackey, through her investigation, knows what Stephen Sears has been telling his clients, knows that 100 percent of them go to him for asset protection, knows that 98 percent of them are employing strategies for onshore banking, and that so many are employing these offshore banking strategies, then Agent Mackey, once she puts those names with that information, she's got it. She knows what Stephen Sears told them, and I believe that would be a violation of the privilege. So I think it goes to both. On the relevancy issue, I think the way this issue is framed in this case, it's a gross receipts analysis. I think what the district court was most concerned with was, okay, I'll give you all the checks. The IRS has the checks. Presumably they've gone through them. Show me there's a problem with this. You come back to me and tell me there is — that there's even a discrepancy between the returns and the gross receipts. Then you get past potential relevancy — I mean, excuse me, then you get past idle hope to potential relevancy. So I think it's important that the court understand the context, that the district court did give them the records they sought. They've got the records. They clearly have been free since this time to issue a new summons or to go back to the district court, who was exercising its discretion. They chose not to do so. And so unless the court has any questions — yes, sir. What did the district judge decide first? The privilege question or the relevancy question? In the opinion, privilege comes first, Your Honor. Well, hasn't that sort of set the cart before the horse? Your Honor, I think — I think perhaps it does, particularly because he's got — it's a question of his discretion on the relevancy, and it's a — it's a — more of a legal question or a mixed question on attorney-client privilege. But I think it — I don't think that puts the cart before the horse, because I think he just addressed both and said, I just have both of these reasons for quashing the subpoena to the extent that it seeks client-identifying information. All right. Thank you, counsel. Thank you. Rebuttal? Just a couple points, Your Honor. On the — he's mentioned this California privacy right matter, which establishes, I guess, a quasi-privacy right under the California Constitution. It doesn't control for Federal privilege purposes. He conceded that. And also, to establish the attorney-client privilege, it has to be a confidential, professional communication. We are dealing with a privacy right. We're not talking about something done to obtain legal advice. So it really does not have any bearing on the attorney-client privilege, and we discussed this a little bit more extensively in our reply brief. But we think that point has no bearing. I would also mention that I did bring out the point that the names here are coming from the bank, not from an attorney. And we submit that — we maintain all of our other arguments, but I want to note the additional point that there is a — would be a waiver when they gave up the client's name to the bank, and there was no addressing of that point. And as to the other parts, we simply continue with our arguments. I just wanted to make that point, though. And if there are no further — Mr. Metzler, what's the significance, if any, of Mr. Miller's characterization of the motive of the clients in going to Mr. Sears, that that would be discovered? I don't know how the motive of the client would be discovered. We talk about the BDO side in the case out of the Seventh Circuit in our brief, and that there there were 20 tax shelters where you had specific information about these tax shelters. And the Seventh Circuit — this motive matter was brought up, and that the Seventh Circuit said that this is not enough to — it's not specific enough. And at best, they would be showing some sort of general tenor, and the general tenor of the advice is not covered by the attorney-client privilege. The Clark case out of the Ninth Circuit would establish that.
judges: Aldrich, Bennett, Goodwin